## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MOLLIE TOMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV856 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Mollie Toms, brought this action pursuant to Section 205(g) of the Social

Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain review of a final decision

of the Commissioner of Social Security denying her claims for a Period of Disability ("POD")

and Disability Insurance Benefits ("DIB") under Title II of the Act.[1]  The Court has before it

the certified administrative record and cross-motions for judgment.

## I.  PROCEDURAL HISTORY

Plaintiff protectively filed an application for a POD and DIB on March 12, 2007

alleging a disability onset date of June 2, 2005.   (Tr. 10, 105-108.)[2]  The application was

denied initially and again upon reconsideration.   (*Id.* at 44-45, 46-49, 56-62.)   Plaintiff then

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the administrative record.

requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 65.) At the January 5, 2010 hearing were Plaintiff, her attorney, her mother, and a vocational expert ("VE"). (*Id.* at 20-42.) The ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 7-19.) Plaintiff requested that the Appeals Council review the ALJ's decision and also submitted new evidence to the Appeals Council. (*Id.* at 4-5.) On September 15, 2010 the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-4.)

## II. FACTUAL BACKGROUND

Plaintiff was 41 years old on the alleged disability onset date. (*Id.* at 17.) She had at least a high school education and was able to communicate in English. (*Id.* at 18.)

## III. STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

---

[3] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3).

3

months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[4] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(2)(A).

## A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2) Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3) Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

---

[4] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.

(5)     Whether the claimant is able to perform any other work considering both her residual functional capacity[5] and her vocational abilities.   If so, the claimant is not disabled.

20 C.F.R. § 404.1520.

Here, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 2, 2005.   (Tr. at 12.)   The ALJ next found in step two that Plaintiff's depression was a severe impairment.   (*Id.*)   At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1.   (*Id.* at 13.)   At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work.   (*Id.* at 17.)   At step five, the ALJ determined that considering Plaintiff's age, education, work experience, and RFC, there were jobs in the national economy that the claimant could perform.   (*Id.* at 18.)

## B.   Residual Functional Capacity Determination

Prior to step four, the ALJ determined Plaintiff's RFC based on his evaluation of the evidence, including Plaintiff's testimony and the findings of treating and examining health care providers.   (*Id.* at 15-17.)   Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels, but was also limited to simple, routine, repetitive tasks with short simple instructions, few work place

---

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (*e.g.*, pain).   *See* 20 C.F.R. § 404.1545(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006).   The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)."   *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

decisions or changes, only occasional interactions with public and co-workers, and only frequent interactions with supervisors. (*Id.* at 15.)

## C. Past Relevant Work

The ALJ found in step four that Plaintiff was not capable of performing past relevant work as a fundraiser, child monitor, and shipping and receiving clerk. (*Id.* at 17.)

## D. Adjustment to Other Work

The claimant bears the initial burden of proving the existence of a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Smith v. Califano*, 592 F.2d 1235, 1236 (4th Cir. 1979). Once the claimant has established at step four that she cannot do any work she has done in the past because of her severe impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with her RFC, age, education, and past work experience. *Hunter*, 993 F.2d at 35; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980). Here, the ALJ found that given Plaintiff's age, education, work experience, and RFC, there were other jobs existing in significant numbers in the national economy that she could perform such as a rural mail carrier, laundry laborer, and hand packager. (*Id.* at 18.)

## V. ANALYSIS

Plaintiff essentially raises five issues. First, she contends that the ALJ "erred in failing to find that the claimant is disabled under Listing 12.04." (Docket Entry 15 at 12.) Second, Plaintiff argues that ALJ did not properly assess the evidence from Dr. Post, a treating physician. (*Id.* at 10-11.) Third, she asserts that the ALJ's credibility evaluation is

unsupported by substantial evidence. (*Id.* at 8-10.) Fourth, Plaintiff maintains that the ALJ's step five finding is unsupported by substantial evidence. (*Id.* at 9.) Last, she argues that the Appeals Council erred in declining to review the ALJ's decision. (*Id.* at 11-12.)

## A. The Listings

Plaintiff contends the ALJ erred in not concluding that she met the criteria of Listing 12.04. (Docket Entry 15 at 12.) Specifically, Plaintiff contends:

> The claimant meets both the A and B criteria of listing 12.04. The claimant has a loss of interest in all activities. This is characterized throughout the record and in the claimant's testimony as spending several days in bed (T. 30, 360). There is also sleep disturbance, decreased energy, and difficulty in concentrating. She has marked restrictions in social functioning (T. 350-64). She will not talk on the telephone to people who had been friends. (T. 36). She has not maintained past friendships. (T. 36). There are days that she is so depressed that she cannot go to therapy. (T. 227). She also experienced marked difficulties in concentration and persistence. (T. 359-64). She cannot read secondary to the decreased concentration. (T. 197). She rarely starts a task. (T. 36). If she does start a task, she does not finish it. *Id.* These limitations meet the A and B criteria of listing 12.04 entitling the claimant to benefits.
>
> The decision should be reversed and the benefits previously denied should be awarded.

(Docket Entry 15 at 12.)

Plaintiff contends that she has satisfied Listing 12.04, Affective Disorders, because she has shown that A *and* B, as set forth below, are satisfied:

> The required level of severity for these disorders is met when the requirements in both A and B are satisfied . . . .

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:

   a. Anhedonia or pervasive loss of interest in almost all activities; or

   b. Appetite disturbance with change in weight; or

   c. Sleep disturbance; or

   d. Psychomotor agitation or retardation; or

   e. Decreased energy; or

   f. Feelings of guilt or worthlessness; or

   g. Difficulty concentrating or thinking; or

   h. Thoughts of suicide; or

   i. Hallucinations, delusions, or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:

   a. Hyperactivity; or

   b. Pressure of speech; or

   c. Flight of ideas; or

   d. Inflated self-esteem; or

   e. Decreased need for sleep; or

   f. Easy distractibility; or

   g. Involvement in activities that have a high probability of

painful consequences which are not recognized; or

      h. Hallucinations, delusions or paranoid thinking;

or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B. Resulting in at least two of the following:

      1. Marked restriction of activities of daily living; or

      2. Marked difficulties in maintaining social functioning; or

      3. Marked difficulties in maintaining concentration, persistence, or pace; or

      4. Repeated episodes of decompensation, each of extended duration

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(A)-(B).[6]

Plaintiff has failed to point to evidence that makes out these required showings of "marked" functional limitations or decompensation history or risk, and/or inability to

---

[6] To qualify as "marked," a limitation must "interfere seriously with [one's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C). Decompensation refers to "an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4). Repeated periods of decompensation are measured on a four-point scale using the designation "[n]one, one or two, three and four or more." 20 C.F.R. § 404.1520a(c)(4). Repeated periods of decompensation, each for extended durations, requires "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." 20 C.F.R. pt 404, subpt P, app. 1, § 12.00(c)(4). "If [Plaintiff] experienced more frequent episodes of shorter duration or less frequent episodes of longer duration, [the ALJ] must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence." *Id.*

maintain an independent existence. (Docket Entry 15 at 12.) In in reaching his conclusions, the ALJ considered Plaintiff's activities of daily living; social functioning; concentration, persistence or pace; and any episodes of decompensation. (Tr. 13-15.) Specifically, regarding activities of daily living, the ALJ concluded (Tr. 13-14) that Petitioner had mild restrictions, reasoning that despite Plaintiff's testimony that she did not attend to her personal hygiene, often spends several days in bed, and relies on her mother to drive her to her doctor's appointments, (1) Plaintiff appeared at the hearing appropriately groomed and that she had been dressed and groomed at the February 27, 2008 consultative psychological examination (*id.* at 193), (2) Plaintiff was able to attend regular doctor's appointments and managed to keep thirty-five appointments over an eighteen month period with her psychologist (*id.* at 227-29), (3) Plaintiff's consultative psychological examination in February 2008 revealed that Plaintiff's activities of daily living (including cleaning, shopping, cooking, maintaining a residence, and taking public transportation) were done at her own initiative (*id.* at 195-199). The ALJ also rejected the DDS review psychologist's opinion of moderate limitations in this category at the reconsideration level (*id.* at 242-255), but the ALJ's finding was consistent with the opinion of the DDS review psychologist finding of mild restrictions at the initial level (*id.* at 206-219).[7]

---

[7] In detailing the reasons why Plaintiff only had mild restrictions in activities of daily living, the ALJ stated that "the claimant is able to attend regular doctor's appointments and managed to keep 35 appointments over an 18-month period with her psychologist Cynthia L. Post." (Tr. 13 citing 227-29.) The ALJ also asserts that "there is limited evidence of treatment for this condition" (*i.e.,* Plaintiff's depression) and that Dr. Post's treatment notes indicate that Plaintiff "sought therapy 11 times in the course of 8 months." (*Id.* at 15.) Plaintiff contends that this amounts to a contradiction in the ALJ's findings. (Docket Entry 15 at 9.) As noted above, there are only a few pages of Dr. Post's treatment notes in the record. Two of those pages detail what transpired during eleven meetings between Plaintiff and Dr. Post. (Tr. at 190-91.) There are no additional treatment notes from Dr. Post in the record, however, there is a statement by Dr. Post alluding to many additional treatments. (*Id.* at 227.) However, there is no additional evidence in the record detailing what

The ALJ next concluded that Plaintiff had moderate difficulties in social functioning. (*Id.* at 14.) The ALJ pointed out that Plaintiff resides with her parents and reports no difficulties with her living arrangement. (*Id.*) The ALJ pointed further to the testimony of Plaintiff's mother, who reported no difficulties with Plaintiff's living arrangement. (*Id.* referencing Tr. 35-38.) Plaintiff's mother testified further that Plaintiff no longer socialized with friends, and has been unable to maintain friendships other than with one couple, but that even that relationship had suffered because Plaintiff could only maintain a relationship with them via email. (*Id.*) The ALJ noted too that his finding of moderate social functioning was consistent with the opinions of the DDS reviewing psychologists. (*Id.* citing 252, 216.)

Next, the ALJ concluded that Plaintiff had moderate difficulties with concentration, persistence, or pace. (Tr. at 14.) The ALJ noted that Plaintiff testified that she could not concentrate enough to read the paper or watch a television show. (*Id.* referencing 31.) Plaintiff's mother testified that Plaintiff rarely engaged in activities and is usually unable to complete them. (*Id.* referencing 36.) The ALJ noted, however, that Plaintiff was able to follow the proceedings without difficulty and responded appropriately to questioning for a period of approximately fifteen minutes without apparent difficulties and that the finding of moderate difficulties in this category was consistent with the DDS review psychologists. (*Id.* at 206-219, 242-255.) Finally, the ALJ concluded that there were no episodes of decompensation of an extended duration. (*Id.* at 14.) Thus, because Plaintiff's mental impairment did not cause at least two "marked" limitations or one "marked" limitation and

transpired during those visits. This does not strike the undersigned as a contradiction. However, even assuming it did, the "contradiction" would not alter the ultimate recommendation set forth below as any error would ultimately be harmless.

"repeated" episodes of decompensation of an extended duration, the "paragraph B" criteria were not satisfied. (*Id.*)

Upon review of the entire record, the undersigned concludes that the ALJ's determination that Plaintiff had not met or medically equaled the criteria of Listing 12.04 is supported by substantial evidence. As Defendant correctly points out (Docket Entry 19 at 6-7), in reaching this conclusion, the ALJ relied upon the opinions of state agency psychologist Dr. C.B. Moore, Psy. D., and state agency psychological consultant W.W. Albertson, Ed. D., who reviewed the record and concluded that at most Plaintiff only had moderate limitations. (Tr. 14, 206-219, 242-55.) These doctors and consultants are experts in the evaluation of medical issues in disability claims under the Act, whose opinions must be considered by the ALJ to the extent they are consistent with the record. 20 C.F.R. 404.1527(f); Social Security Ruling ("SSR"), 96-6p, 1996 WL 374180, at *2. The opinion of a non-examining psychologist can constitute substantial evidence in support of the ALJ's decision where, as here, it is consistent with the record. *Smith v. Schweicker*, 795 F.2d 343, 345-46 (4th Cir. 1986); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984).

Moreover, the undersigned agrees with Defendant that where medical evidence from examining or treating sources is conflicting, an ALJ's determination on the side of the non-examining physician should stand. *Gordon*, 725 F.2d at 235. While Plaintiff submitted an opinion from a "current treating physician" (Docket Entry 15 at 11), Dr. R. Nene, it is unclear whether this is an accurate description of the relationship between Dr. Nene and Plaintiff (Tr. 358-65). The opinion from Dr. Nene dated April 14, 2010, which was submitted

after the ALJ's decision was issued on March 19, 2010, is the only evidence of treatment in the record from the physician. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) ("While the Secretary is not bound by the opinion of a claimant's treating physician, that opinion is entitled to great weight for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."); 20 C.F.R. 404.1527(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.").

In any event, Dr. Nene concluded that Plaintiff had marked and extreme limitations (Tr. 358-65), however, her opinion was not supported by clinical findings and is inconsistent with the State agency opinions. *See* 20 C.F.R. 404.1527(d)(2) (concluding that the ALJ will give controlling weight to the opinion of a treating source regarding the nature and severity of an impairment if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the case record). *Craig*, 76 F.3d at 590 ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."); *accord Mastro*, 270 F.3d 171, 178 (4th Cir. 2001). Consequently, even had the ALJ seen Dr. Nene's report, he likely would have rejected it as being unsupported by objective medical evidence and at odds with the state agency opinions.

## B. The Treating Physician Rule

Plaintiff next argues that the ALJ erred in concluding that there was no treating source to consider, because the medical opinion of Dr. Post is entitled to controlling weight. (Docket Entry 15 at 10-11.) The "treating physician rule,"[8] 20 C.F.R. § 404.1527(d)(2) generally provides more weight to the opinion of a treating source, because it may "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence." 20 C.F.R. § 404.1527(d)(2).[9] But not all treating sources are created equal. An ALJ refusing to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give it. *Id.* § 404.1527(d)(2)-(6). These factors include: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *Id.*

---

[8] Effective March 26, 2012, a regulatory change renumbered, but did not impact the substantive language of, the treating physician rule. 77 Fed. Reg. 10651-10657 (Feb. 23, 2012). Given that all material events in this action precede this nominal regulatory change, this Opinion and Recommendation will make use of the pre-March 26, 2012 citations.

[9] SSR 96–2p provides that "Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-2p, *Giving Controlling Weight to Treating Source Medical Opinions.* However, where "a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight." *Id.* SSR 96-5p provides further that "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p, *Medical Source Opinions on Issues Reserved to the Commissioner.* However, "opinions from any medical source about issues reserved to the Commissioner must never be ignored, and . . . the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)." *Id.*

Significantly, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, must be both well-supported by medical signs and laboratory findings as well as consistent with the other substantial evidence in the case record. *Id.* § 404.1527(d)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *accord Mastro v. Apfel*, 270 at 178. Opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act never receive controlling weight because the decision on that issue remains for the Commissioner alone. 20 C.F.R. § 404.1527(e).

Here, after the ALJ rendered his decision, Plaintiff submitted a letter from a licensed psychologist, Dr. Cynthia Post, who wrote the following on December 5, 2007:

> Ms. Toms is currently suffering from depression. The symptoms she is currently experiencing include anhedonia, helplessness, hopelessness, crying easily and suicidal ideation. Additionally, she is having trouble concentrating and completing tasks. These symptoms are making it difficult for her to work at this time. Recently, she began experiencing numbness. This combine with all the other physical problems have led her to become increasingly depressed and she is often unable to get out of bed as [a] result of it. In my clinical opinion, the chroninty [sic] of both her depression and physical problems make it likely that she will be in need of long-term disability.

(Tr. 4, 184.) Two pages of Dr. Post's treatment notes are also in the record and were before the ALJ. (Tr. at 190-91.) In support of her argument, Plaintiff points to a portion of one treatment note for the proposition that Plaintiff was unable to focus or leave bed for extended periods. (Docket Entry 15 at 10 citing Tr. at 190.) Plaintiff points further to a number of

other portions of the record containing testimony and medical records, contending that these references are consistent with Dr. Post's conclusions. (Docket Entry 15 at 10-11 citing Tr. 195, 197, 226, and 274.)

It does not appear that Dr. Posts' December 5, 2007 note was before the ALJ prior to his rendering of the March 19, 2010 decision. (Tr. 4, 184.) Nevertheless, there are good reasons to believe that had the ALJ considered the letter along with Dr. Post's treatment notes, they would not have prompted the ALJ to change the disposition set forth in his decision. This is because Dr. Post's opinion is internally inconsistent, addresses matters reserved to the ALJ, and is inconsistent with other substantial evidence on the record. First, Dr. Post's treatment notes from September 2007 maintain that Plaintiff was "involved in something meaningful for her and feeling physically able to do it . . . was . . . overall feeling better when she's busy [and] . . . . doing things in spite of pain. (Tr. 191.) As of November 12, 2007, Dr. Post noted that Plaintiff was "doing better." (*Id.*) As Defendant correctly points out (Docket Entry 19 at 9) these findings are inconsistent with a finding of total disability.

Second, Dr. Post's conclusion that Plaintiff would likely "be in need of long-term disability" strays into areas reserved for the ALJ. As noted above, opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act never receive controlling weight because the decision on that issue remains for the Commissioner alone. 20 C.F.R. § 404.1527(e). Finally, in addition to being internally inconsistent and addressing matters reserved for the ALJ, Dr. Post's evaluation is also inconsistent with other substantial evidence of record, such as the state agency opinions

concluding that she was not totally disabled. Consequently, even if the ALJ was able to view Dr. Post's letter opinion, there is no reason to believe that it would have been afforded any special significance.

## C. Credibility

Plaintiff asserts that the ALJ's credibility evaluation is unsupported by substantial evidence. (Docket Entry 15 at 8-10.) The Fourth Circuit Court of Appeals has adopted a two-step process by which the ALJ must evaluate a claimant's symptoms. The first step requires the ALJ to determine if the plaintiff's medically documented impairments could reasonably be expected to cause plaintiff's alleged symptoms. *Craig*, 76 F.3d at 594. The second step includes an evaluation of subjective evidence, considering claimant's "statements about the intensity, persistence, and limiting effects of [claimant's] symptoms." *Id.* at 595 (citing 20 C.F.R. §§ 416.929(c)(4) and 404.1529(c)(4).) "The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment." *Grubby*, 2010 WL 5553677, at *3 (citing *Craig*, 76 F.3d at 595; 20 C.F.R. § 404.1529(c).) "Other evidence" refers to factors such as claimant's daily activities, duration and frequency of pain, treatment other than medication received for relief of symptoms, and any other measures used to relieve claimant's alleged pain. *Id.* Moreover, SSR 96-8p requires that:

> The adjudicator must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC. Careful consideration must be given to any available information about symptoms because subjective descriptions

may indicate more severe limitations or restrictions than can be
shown by objective medical evidence alone.

SSR 96-8p, 1996 WL 374184, *5. Similarly, in determining the credibility of a claimant, SSR
96–7p, instructs the ALJ to "consider the entire case record" and requires a credibility
determination to "contain specific reasons for the finding on credibility, supported by the
evidence in the case record[.]" SSR 96–7p, 1996 WL 374186, at *4. Importantly, an ALJ's
credibility determination is also entitled to "substantial deference." *Sayre v. Chater*, NO.
95-3080, 1997 WL 232305, at *1 (4th Cir. May 8, 1997) (unpublished); *Salyers v. Chater*, No.
96-2030, 1997 WL 71704, at *1 (4th Cir. Feb. 20, 1997) (unpublished).

Here, the ALJ performed both steps of the analysis. First, the ALJ completed step
one, concluding that the "claimant's medically determinable impairments could reasonably be
expected to cause the alleged symptoms." (Tr. 17.) Next, the ALJ completed step two of the
analysis, concluding Plaintiff's statements regarding "intensity, persistence, and limiting effects
of [her] symptoms [were] not credible to the extent they are inconsistent with" her RFC. (*Id.*)

The ALJ continued his analysis concluding:

> In terms of the claimant's alleged impairments, the undersigned
> finds that her statements regarding the persistence and limiting
> effects of her impairments credible, yet unpersuasive. The
> claimant has not alleged any side effects from her medication.
> She has not been hospitalized for any acute episodes of
> depression. She has not experienced any periods of
> decompensation for extended periods of time. The claimant
> was able to testify and adequately follow the proceedings without
> any reported difficulties, a task considered stressful, tending to
> belie the limited nature of her depression.
>
> The undersigned finds that the statements of the claimant's
> mother were also credible but unpersuasive. Neither the
> claimant nor her mother reported any side effects to medication.

Neither reported any hospitalizations for any acute episodes of depression. Further, the claimant's own testimony and ability to function at the hearing evidence a higher level of functioning than alleged.

As for the opinion evidence, no treating source has offered an opinion in this case. Therefore, the undersigned has accorded considerable weight to the opinions of the DDS review psychologists that the claimant retains the ability to conduct simple routine repetitive tasks with some difficulty with interactions with others.

In sum, the above residual functional capacity assessment is supported by the opinions of the DDS review physicians . . . and the medical evidence of record.

(*Id.*)

Here, after reviewing all the evidence of record, the ALJ determined that Plaintiff's subjective statements regarding her limitations due to depression were "credible, yet unpersuasive." (*Id.*) The ALJ essentially incorporated into his analysis his earlier observation that despite allegations of disabling depression, Plaintiff presented very limited evidence of treatment for the impairment (Tr. 15). The medical evidence regarding mental health treatment consisted of four pages of treatment notes, a one-page summary of treatment, and the report of the consultative psychological examination. *See Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) ("An unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility."). The ALJ also pointed out that Plaintiff did not allege side effects from medication, had not been hospitalized for any acute episodes of depression, and had not experienced any periods of decompensation for extended

periods of time.   20 C.F.R. 404.1529(c)(3); SSR 96-7p.

Plaintiff does not address these findings, but instead—citing *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990)—argues that the ALJ's observations of Plaintiff's demeanor at the hearing were improper.   (Docket Entry 15 at 8.)   It is true that the Fourth Circuit Court of Appeals has rejected "sit and squirm" as a proper method for judicial or administrative decision-making.   *See Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), *Grubby*, 2010 WL 5553677, at *3 n.6.   The regulations also provide that in "instances in which the adjudicator has observed the individual, the adjudicator is not free to accept or reject the individual's complaints solely on the basis of such personal observations, but should consider any personal observations in the overall evaluation of the credibility of the individual's statements."   SSR 96–7p, 1996 WL 374186, at * 8.   Here, even assuming the ALJ strayed by impermissibly weighing in on Plaintiff's demeanor, any error is harmless given the evidence and lack thereof set forth above. [10]   Regardless of the abovementioned statements regarding Plaintiff's demeanor, there is substantial evidence on the record in support of the ALJ's credibility determination.   In other words, there is no reason to believe that but for the presumed error, this case would resolve differently.

_____

[10] *See, e.g., Shrewsbury v. Chater*, No. 94–2235, 1995 WL 592236, at *5 (4th Cir. Oct. 6, 1995) (unpublished) ("[I]t is not reversible error for an ALJ to consider a claimant's demeanor when he has already determined that the claimant's alleged level of pain is inconsistent with the objective medical evidence."); *Copeland v. Brown*, 1989 WL 90545, at *3 (4th Cir. 1989) (unpublished) (concluding that it was error for the ALJ to conclude in his decision that "the undersigned has had the opportunity to observe the claimant at the hearing where his attention was unimpaired," but that the error was harmless in light of other "objective evidence that the claimant's pain, though perhaps sometimes severe, was not debilitating"); *Parker v. Colvin*, No. 1:10–CV–650, 2013 WL 4671765, *8 (M.D.N.C. Aug. 30, 2013) (concluding that it was not error for the ALJ to find in his decision that the claimant "had no difficulty testifying whatsoever [and] [t]here were no apparent concentration deficits" where the ALJ did not exclusively rely on his observations of Plaintiff at the hearing in discounting her credibility).

**D. The Appeals Council**

Plaintiff next contends that the ALJ's decision should be reversed and remanded so that the mental residual functional capacity evaluation of Dr. Nene—which Plaintiff submitted after the ALJ's decision but before the Appeals Council denied Plaintiff's request for further review—can be considered. (Tr. 4, 358-65, Docket Entry 15 at 11-12.) More specifically, Plaintiff contends:

> Claimant's current treating physician, Dr. Nene, has completed a mental residual functional capacity evaluation which confirms the claimant's severe limitations from depression. The claimant has extreme limitation in her ability to complete a normal workday due to her inability to get out of bed because of her depression for days at a time. (T. 360.) She also has extreme limitation in her ability to attend a task over an eight hour day. (T. 136). She has marked impairment in her ability to follow detailed instructions; function independently; maintain continuous performance to complete a task; and in her ability to tolerate customary work place stress. (T. 359-64.) She has moderate limitation in her ability to follow work procedures; accept supervision; interact appropriately with the public; exercise appropriate judgment and properly complete sequential tasks without supervision. (*Id.*) Dr. Nene also finds that claimant has not been able to function outside a highly supportive living environment over the last two years. (T. 364.) The doctor also finds that [Plaintiff] would deteriorate under stress. (*Id.*)
>
> The evidence is consistent with the opinion of Dr. Post. The decision should be overturned so this evidence may be properly considered.

(Docket Entry 15 at 11-12.)

The Appeals Council must consider evidence submitted by a claimant with the request for review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or

before the date of the ALJ's decision." *Wilkins v. Sec'y, Dept. of Health & Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative, and material if there is "a reasonable possibility that the new evidence would have changed the outcome of the case." *Id.* at 96. "[T]he Appeals Council must consider new and material evidence relating to the period prior to the ALJ decision in determining whether to grant review, even though it may ultimately decline review." *Id.* at 95. However, the Appeals Council does not need to explain its reason for denying review of an ALJ decision. *Meyer v. Astrue*, 662 F.3d 700, 705 (4th Cir. 2011). An ALJ may discount a treating physician's opinion if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques. SSR 96–2p, 1996 WL 374188, at *1; *Mastro*, 270 F.3d at 178.

Here, the Appeals Council received Dr. Nene's mental residual functional capacity evaluation after the ALJ rendered his decision. (Tr. 4.) It then made the evaluation part of the record, but declined to review the ALJ's decision, noting that the "additional evidence" submitted did "not provide a basis for changing the [ALJ's] decision. (*Id.* at 2, 4.) As explained, the opinion is not supported by any findings or clinical evidence and is contrary to the conclusions of the state agency psychologists. It would thus be entitled to little weight. Consequently, the decision of the Appeals Counsel is supported by substantial evidence and there is no reason to believe that had the ALJ considered this new evidence, he would have reached a different conclusion as to whether Plaintiff was disabled under the Act.

### E. Step Five

Finally, Plaintiff contends that the ALJ erred in determining that she had moderate

limitations in concentration, persistence, and pace, but then failing to ask the VE to consider a hypothetical individual with these moderate restrictions. (Docket Entry 15 at 9-10.) The ALJ did conclude that Plaintiff had moderate restrictions in concentration, persistence, and pace. (Tr. 14-15.) Yet, based on the conclusions of state agency consultants, the ALJ accounted for Plaintiff's moderate restrictions by limiting Plaintiff to simple, routine, repetitive tasks with short, simple instructions, few work place decisions or changes, only occasional interactions with public co-workers, and only frequent interactions with supervisors. (*Id.* at 15, 206-222, 242-254.) Consequently, the ALJ asked the VE to consider a hypothetical with these restrictions. (*Id.* at 40.) As Defendant correctly points out (Docket Entry 19 at 12) an ALJ's findings regarding the B Criteria are only relevant to the issues of whether Plaintiff has a severe impairment and whether her condition was equivalent to any of the impairments that are listed in Appendix A of the regulations. *See Furst v. Comm's of Social Security*, 2000 WL 282909, at *2 (6th Cir. Mar. 13, 2000); SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).

Moreover, in questioning a VE in a Social Security disability hearing, an ALJ must propound hypothetical questions that account for all of the claimant's limitations. *Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989). However, "[t]here is no obligation . . . to transfer the findings [from a mental impairment report] verbatim to the hypothetical questions." *Yoho v. Commissioner of Soc. Sec.*, No. 98–1684, 1998 WL 911719, at *3 (4th Cir. Dec. 31, 1998). So long as a hypothetical adequately encompasses the effects of a claimant's mental limitations, it suffices. *See id.; accord Cox v. Astrue*, 495 F.3d 614, 620 (8th Cir.2007) (holding that proper hypothetical questions need only capture "the concrete consequences of a claimant's

deficiencies"). Here, the ALJ accounted for Plaintiff's moderate restrictions by limiting Plaintiff to simple, routine, repetitive tasks with short, simple instructions, few work place decisions or changes, only occasional interactions with public and co-workers, and only frequent interactions with supervisors. There is no reversible error here. *Hawley v. Astrue*, No. 1:09CV246, 2012 WL 1268475, at *7 (M.D.N.C. Apr. 16, 2012) ("[T]he restriction to unskilled, simple, routine, repetitive tasks and limited interaction with others adequately accounted for Plaintiff's intellectual deficit and problems with concentration, persistence, and pace, in light of the evidence that Plaintiff can perform such two-hour blocks, as an eight-hour workday typically.")[11]

## VI. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 12) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 18) be **GRANTED** and the final decision of the Commissioner be upheld.

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
February 7, 2014

---

[11] In support of this argument, Plaintiff cites *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 619–20 (7th Cir. 2010). However, the Seventh Circuit's decision in that case is distinguishable in that the error there lay in the ALJ's failure to include in the hypothetical a moderate limitation on concentration, persistence, or pace explicitly included in the RFC assessment. (*Id.* at 617-20.)

24